1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DEKALB COUNTY PENSION FUND,

Plaintiff,

v.

ROBLOX CORPORATION, et al.,

Defendants.

Case No. 23-cv-06618-RS

**ORDER GRANTING MOTION TO DISMISS, WITH LEAVE TO AMEND**

## I. INTRODUCTION

This is putative class action brought on behalf of shareholders against Roblox Corporation and certain of its officers. Plaintiffs contend Roblox's stock price was artificially inflated during the proposed class period of March 10, 2021, through February 15, 2022, as the result of misrepresentations in various public statements made by the company. Defendants move to dismiss. Because the complaint does not allege an adequate factual basis for elements of the claims, the motion will be granted, with leave to amend.

## II. BACKGROUND

Founded in 2004, Roblox operates an online video game platform that provides its users with tools to create games that are played by other users. While Roblox is free to join, many games and activities on the platform require the purchase of the company's proprietary online currency, "Robux." These Robux, purchased through online credit card transactions, permit users

to buy virtual goods and access certain paid experiences on the Roblox platform. Robux purchases—or bookings, as known in company and industry analyst parlance—constitute nearly all of Roblox's revenue.

Roblox was privately held prior to the proposed class period. By October of 2020, Roblox was considering going public through an IPO. In December of 2020, however, Roblox advised the SEC that it intended to go public through a direct listing. Roblox told the SEC it believed a direct listing would "provide for an improvement over an underwritten offering for its employees and stockholders who elect to sell any of their shares of Class A common stock." Plaintiffs speculate defendants elected to proceed with a direct listing, instead of an IPO, because it likely would enable them to cash out more quickly, before bookings declined.[1]

Plaintiffs allege Roblox had experienced "unprecedented" and "blockbuster growth" in 2020, including a "sharp uptick in monetization trends," during the time COVID-19 restrictions were in effect. For potential investors, the concern was that Roblox's user base historically had been largely composed of individuals under the age of 13. This presented at least three risks. First, as schools were expected to reopen in the fall of 2021, it seemed likely users under 13 would spend less time on the platform. Second, Roblox was under pressure to, and intended to, implement stronger parental controls to prevent or limit spending on the platform by their children under 13. Third, Roblox faced concerns that the platform potentially exposed users under 13 to explicit adult content, online predators, bullying and hate speech.

There is no dispute that it was crucial to Roblox and to existing and potential shareholders that the company be able to show it could "age up" its user base. Important metrics for the company included "ADU"—the average number of persons using the site each day, and "ABPDPU"—average bookings per daily active user. Those two numbers did not necessarily move in lockstep. Gains in the number of active users contributed to the bottom line only to the

[1] Plaintiffs incorrectly allege that insiders are "statutorily" precluded from selling stock during a "lock up" period following an IPO. Such lock up periods, however, are ordinarily required by the underwriters in IPOs.

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

extent those new users made purchases. Apparently there was an assumption that older users would, if anything, drive up ABPDU due to their financial resources, but that may not have materialized.

The gravamen of the complaint is that defendants allegedly made false public statements on March 10, 2021, (the day of the direct listing), March 11, 2021, and on additional specified dates in May, August, and November of 2021. *See* Amended Complaint, paras. 201-234.[2] Although the complaint suggests some of defendants' statements about their expectations of future performance were unwarranted given the facts known at the time, plaintiffs have expressly disavowed any intent to pursue this action as a "guidance" case, and have not otherwise identified projections that might be actionable, given the law governing statements of opinion, general optimism, puffery, and the like.[3] The statements of existing fact that plaintiffs contend were false, and on which their claims are based, all relate to the percentage of Roblox's user base that consisted of those under 13 years old, and the impact on bookings.

III. LEGAL STANDARDS

A. Rule 12(b)(6)

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While "detailed factual allegations are not required," a complaint must include sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S.

---

[2] The complaint includes a passing assertion that the risk disclosures in the direct offering prospectus were "inadequate," but does not base its claims on any alleged misrepresentations in, or omissions from, the prospectus. See Amended Complaint para. 110.

[3] The alleged misstatements set out in paras. 205 and 207 fall into this category except to the extent plaintiffs contend "monetization" had not been "scaling with . . . user and engagement growth."

544, 570 (2007)). A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Dismissal under Rule 12(b)(6) may be based either on the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). When evaluating such a motion, the court must accept all material allegations in the complaint as true, even if doubtful, and construe them in the light most favorable to the non-movant. *Twombly*, 550 U.S. at 570. "[C]onclusory allegations of law and unwarranted inferences," however, "are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996).

B. <u>Exchange Act Claims</u>

Section 10(b) of the Exchange Act makes it unlawful for "any person . . . [t]o use or employ, in connection with the purchase or sale of any security registered on a national securities exchange . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. § 78j(b). Pursuant to Section 10(b), the SEC has promulgated Rule 10b-5, which provides, *inter alia*, that "[i]t shall be unlawful for any person . . . [t]o engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b-5(c). To establish a violation of either Section 10(b) or Rule 10b-5, a plaintiff must demonstrate "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1052 (9th Cir. 2014) (quoting *Stoneridge Inv. Partners, LLC v. Sci.-Atlanta, Inc.*, 552 U.S. 148, 157 (2008)). Section 20(a) provides a derivative claim to Section 10(b) aimed at "controlling persons," *see* 15 U.S.C. § 78t, and thus liability under Section 20(a) requires an underlying finding of liability under Section 10(b). *See In re Rigel Pharm., Inc.*

1    *Sec. Litig.*, 697 F.3d 869, 886 (9th Cir. 2012).

2         To allege falsity under the pleading standards established by the Private Securities

3    Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(b), a securities fraud complaint must

4    "specify each statement alleged to have been misleading, the reason or reasons why the statement

5    is misleading, and, if an allegation regarding the statement or omission is made on information and

6    belief, . . . state with particularity all facts on which that belief is formed." *Gompper v. VISX, Inc.*,

7    298 F.3d 893, 895 (9th Cir. 2002) (quoting 15 U.S.C. § 78u-4(b)(1)). A statement is misleading "if

8    it would give a reasonable investor the 'impression of a state of affairs that differs in a material

9    way from the one that actually exists.'" *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 985

10   (9th Cir. 2008) (quoting *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002)).

11   The Exchange Act does not "create an affirmative duty to disclose any and all material

12   information," *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44 (2011), but "'once

13   defendants [choose] to tout' positive information to the market, 'they [are] bound to do so in a

14   manner that wouldn't mislead investors,' including disclosing adverse information that cuts

15   against the positive information." *Schueneman v. Arena Pharma., Inc.*, 840 F.3d 698, 705 (9th Cir.

16   2016) (second alteration in original) (quoting *Berson*, 527 F.3d at 987).

17        Scienter is "a mental state embracing intent to deceive, manipulate, or defraud." *See*

18   *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 319 (2007). "[T]he complaint must allege

19   that the defendants made false or misleading statements either intentionally or with deliberate

20   recklessness." *In re Daou Sys., Inc. Sec. Litig.*, 411 F.3d 1006, 1015 (9th Cir. 2005). To plead

21   scienter adequately under the PSLRA, the complaint must "state with particularity facts giving rise

22   to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-

23   4(b)(2)(A). A "strong inference," the Supreme Court has held, "must be more than merely

24   plausible or reasonable." *Tellabs*, 551 U.S. at 314. In evaluating the sufficiency of a plaintiff's

25   allegations of scienter, courts "must consider the complaint in its entirety" and inquire "whether

26   *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether

27   any individual allegation, scrutinized in isolation, meets that standard." *Id.* at 322–23. A complaint

28

1    will survive a motion to dismiss "only if a reasonable person would deem the inference of scienter

2    cogent and at least as compelling as any opposing inference one could draw from the facts

3    alleged." *Id.* at 324. The existence of a motive is relevant, but not dispositive, to establishing

4    scienter. *See Matrixx*, 563 U.S. at 48.

5         Finally, loss causation is "a causal connection between the material misrepresentation and

6    the loss." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342 (2005). Ultimately, the issue is

7    "whether the defendant's misstatement, as opposed to some other fact, foreseeably caused the

8    plaintiff's loss." *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1210 (9th Cir. 2016). Plaintiffs often

9    plead loss causation by identifying a "corrective disclosure," in which the "practices that the

10   plaintiff contends are fraudulent were revealed to the market and caused the resulting losses."

11   *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1063 (9th Cir. 2008).

12

13                                      IV. DISCUSSION

14        A. Misrepresentations

15        The representations of existing fact alleged in the complaint to have been false or

16   misleading all relate to the percentage of daily users of the platform who were over the age of 13,

17   or the impact on average daily bookings per user. See, *e.g.* para. 211, alleging as false "We now

18   have about 44% of our users that are [] over the age of 13"; para. 213, "In Q1 2021, our

19   demographics continued to expand with users over the age of 13 growing at 111% and now

20   accounting for 49% of the user base"; para. 214, "[W]e're close to passing, if not passing . . .

21   having more of our users being 13 over than under 13"; para. 221, "We have passed having the

22   majority of people on our platform be 13 and over as opposed to 13 and under"; para. 224,

23   "monetization [] whether under 13 or over 13 is actually quite similar"; para. 231 "Over half of

24   our people are over 13-year old plus."

25        To support their allegations these representations were false or misleading, plaintiffs rely

26   on five "confidential witnesses"—former Roblox employees—who reported Roblox management

27   held "town meetings" throughout 2021 in which various performance data allegedly were shared

28

contradicting the public statements. The allegations are insufficient, however, because they inconsistently refer to metrics regarding numbers of Roblox users and numbers regarding bookings. Without greater clarity and specificity, and/or a stronger factual basis to conclude the confidential witnesses had knowledge of actual metrics contradicting the company's public statements, plaintiffs have not plausibly alleged falsity. *Cf. Kelley v. Rambus, Inc.*, 2008 WL 1766942, at *7 (N.D. Cal. Apr. 17, 2008) ("because many of Plaintiffs' allegations are confusing and/or internally inconsistent, both Defendants and the Court have been limited severely in attempting to address the substantive adequacy of Plaintiffs' fraud claims in a meaningful way).[4]

B. Loss causation

Even if the complaint's allegations regarding the confidential witnesses were sufficient to establish falsity at the pleading stage, dismissal would still be warranted because plaintiffs have not pleaded sufficient facts to show loss causation. "Loss causation is the causal connection between a defendant's material misrepresentation and a plaintiff's loss." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 392 (9th Cir. 2010) (citing *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 344–45, 577 (2005)).

Critically, as the Ninth Circuit stated in *Oracle*, "loss causation is not adequately pled unless a plaintiff alleges that the market learned of and reacted to the practices the plaintiff contends are fraudulent, as opposed to merely reports of the defendant's poor financial health generally." 627 F.3d 376 at 392. Here, plaintiffs have not alleged any corrective disclosures or that the market otherwise learned the statements about the percentage of users over the age of 13 or

---

[4] Defendants also argue the complaint does not adequately allege scienter. Because plaintiffs have not presented sufficient facts to show actionable misrepresentations or omissions in the first instance, it follows that they have not established scienter. Furthermore, without knowing what false statements or omissions, if any, plaintiffs might be able to allege adequately in any amended complaint, it is difficult to predict whether the scienter allegations will suffice. That said, there appears to be merit to defendants' arguments that the confidential witnesses lack sufficient knowledge on the point and that defendants' alleged stock sales during the class period are not so suspicious as to support scienter, at least standing alone.

their impact on bookings were false. Indeed, Roblox continues to assert that all of the challenged statements were true when made.

Plaintiffs' allegations show Roblox's stock price dropped significantly when data was released showing bookings were not growing as robustly as analysts had predicted and the company had hoped. There are no allegations the market obtained information that any of the company's prior statements regarding the age of users was false.

Plaintiffs' loss causation argument is, effectively, that the market reacted to the supposed impact of the purported misrepresentations—the slowdown in growth—rather than to disclosure of the alleged fraud itself. That is insufficient. *Oracle*, 627 F.3d at 392 ("Loss causation requires more than an earnings miss.").[5]

## V.  CONCLUSION

The motion to dismiss is granted, with leave to amend. Any amended complaint shall be filed within 20 days of the date of this order.

**IT IS SO ORDERED**.

Dated: March 28, 2025

_____
RICHARD SEEBORG
Chief United States District Judge

---

[5] An undercurrent in plaintiffs' argument is the disappointing results support an inference that the prior reports regarding users and bookings must have been false. That is the reverse of the causation that must be alleged and proved.